**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT AKRON**

**BENJAMIN BARRETT**,

2600 West Dale Road NW
Canton, Ohio 44708

**PLAINTIFF**,

v.

**PERRY TOWNSHIP, OHIO**,

C/O Township Trustees or Law Director
3111 Hilton Street NW
Massillon, Ohio 44646

and,

**MATTHEW MILLER**, *in both his official and individual capacities*,

3111 Hilton Street NW
Massillon, Ohio 44646

and,

**LISA NELLIGAN**, *in both her official and individual capacities*,

3111 Hilton Street NW
Massillon, Ohio 44646

and,

**RALPH DECHIARA, JR.**, *in both his official and individual capacities*,

3111 Hilton Street NW
Massillon, Ohio 44646

and,

CASE NO. 5:26-cv-2692

**COMPLAINT WITH JURY DEMAND**

**BRYAN TAYLOR**, *in both his official and individual capacities*,

3111 Hilton Street NW
Massillon, Ohio 44646

and,

**JASON FISHER**, *in both his official and individual capacities*,

3111 Hilton Street NW
Massillon, Ohio 44646

**DEFENDANTS**.

## I. NATURE OF THE CLAIMS

1. This is a civil action by Plaintiff Benjamin Barrett against his former employer, Defendant Perry Township, Ohio. Additionally, Mr. Barrett files this action against Defendant Matthew Miller, Defendant Lisa Nelligan, and Defendant Ralph DeChiara Jr., who were the township's trustees responsible for the adverse employment actions against him. Lastly, Mr. Barett files this action against Defendant Bryan Taylor and Defendant Jason Fisher, who were his former supervisors as the Chief of Police and the Deputy Chief of Police and who were likewise responsible for the adverse employment actions against him.

2. As described in this Complaint, Defendants unlawfully terminated Mr. Barrett's employment as a township police officer because of his disabilities and/or erroneously perceived disabilities or impairments. Defendants also failed to reasonably accommodate Mr. Barrett's disability and failed to engage in the interactive process in good faith. These actions violated the disability discrimination protections in Ohio Revised Code Chapter 4112 and, because the defendants are local government actors, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

3. First, Defendants discriminated against Mr. Barrett by terminating employment because of his disability of alcoholism.[1] Specifically, after almost two decades of exemplary service as a law enforcement officer—a tenure that included an Officer of the Year award and an award from the United States Congress for heroism in the line of duty—Defendants hired a psychologist who conducted a mental fitness examination of Mr. Barrett and claimed his diagnosed alcoholism allegedly made him unfit for his job. This was not true. Rather, while Mr. Barrett had been diagnosed with alcoholism and had been receiving treatment from his own providers, it never adversely affected his job duties as demonstrated by his strong performance. Moreover, Mr. Barrett retained his own psychologist who likewise conducted a mental fitness examination and, in a second opinion, concluded that Mr. Barrett's alcoholism did not prevent him from effectively performing his job. After Defendants refused to consider Mr. Barrett's own psychologist's opinions or to retain a different mutually agreed psychologist for a third opinion, they fired Mr. Barrett and explicitly stated it was because they believed his disability of alcoholism allegedly prevented him from performing the essential functions of his job.

4. Mr. Barrett and his union subsequently grieved this termination and won at arbitration. The arbitrator held that there was no just cause under the union contract to fire Mr. Barrett and instead ordered Defendants to select a mutually agreed upon psychologist who would provide that third opinion. Defendants refused to comply with the arbitration award and instead filed an arguably frivolous appeal of the award in state court. As the Sixth Circuit has held in *Smith v. City of Union, Ohio*, 144 F.4th 867 (6th Cir. 2025), an arbitrator's ruling that the

---

[1] Alcoholism has long qualified as a disability under the Americans with Disabilities Act (ADA) and Ohio Revised Code Chapter 4112. *Mararri v. WCI Steel, Inc.*, 130 F.3d 1180, 1180-81 (6th Cir. 1997) ("The disability claimed by the plaintiff is alcoholism, a condition that is protected under the ADA."); *Hazlett v. Martin Chevrolet, Inc.*, 25 Ohio St.3d 279, 496 N.E.2d 478, 479-81 (holding that alcoholism is a disability protected under Ohio Revised Code Chapter 4112).

employer lacked just cause to terminate a unionized police officer is evidence that the termination decision was a pretext for discrimination. Moreover, under disability discrimination law, Mr. Barrett's claim is a direct evidence case. As the Sixth Circuit explained in *Hamlin v. Charter Township of Flint*, 165 F.3d 426 (6th Cir. 1999), an employer who fires an employee because of an alleged inability to perform the job due to a disability is the same as firing the employee for the disability itself. Here, that is precisely what Defendants did to Mr. Barrett. But their claim that Mr. Barrett allegedly could not perform his job due to his disability of alcoholism was wrong. He had been performing his job successfully for many years despite his alcoholism while receiving treatment and his own psychologist opined that he was fit for duty.

5. Second, Defendants likewise refused to reasonably accommodate Mr. Barrett's disability of alcoholism. Here, Mr. Barrett, himself and through his union, requested the accommodation of continued treatment with his own providers. Defendants refused and demanded that Mr. Barrett abandon that treatment and instead receive treatment from their own provider who had opined that Mr. Barrett was allegedly unfit for duty. Defendants demanding that Mr. Barrett abandon his ongoing treatment with his own providers was not a reasonable alternative proposal. And Defendants rejected Mr. Barrett and his union's requested accommodation of having a mutually agreed-upon psychologist offer a third opinion and, if necessary, treatment. Defendants therefore did not engage in the interactive process.

6. Third, Defendants also engaged in regarded-as disability discrimination. The psychologist whom Defendants hired to conduct a mental fitness examination also opined that Mr. Barrett allegedly had a "proclivity" towards "substance abuse" which allegedly made him unfit to be a police officer. Again, this was not true. Mr. Barrett did not have a substance abuse problem and has never failed a drug test at the township. Defendants nevertheless cited this

alleged "proclivity" towards "substance abuse" as one of the reasons for firing Mr. Barrett. As a result, there is direct evidence that Defendants relied on an erroneously perceived impairment of substance abuse to fire Mr. Barrett, thus engaging in regarded-as disability discrimination.[2]

7. Accordingly, Mr. Barrett now files this civil action. He seeks to recover for the harm he has suffered, to punish Defendants for their conduct, and to deter Defendants from ever perpetrating their conduct against any other person.

## II. JURISDICTION AND VENUE

8. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims made under federal law because those claims constitute a civil action arising under the Constitution, laws, or treaties of the United States.

9. Pursuant to Ohio Revised Code Sections 2307.381-.385, and the Due Process Clauses of the federal and Ohio Constitutions, this Court has personal jurisdiction over all defendants because they are residents of, and have continuous and systematic contacts with, the State of Ohio.

10. Pursuant to 28 U.S.C. § 1391, this Court is the appropriate venue because the Northern District of Ohio is the judicial district in which a substantial part of the events or omissions giving rise to the claims for relief occurred.

11. Pursuant to Rule 3.8 of the Local Civil Rules of the United States District Court for the Northern District of Ohio, the Eastern Division at Akron is the appropriate division

---

[2] An employer's erroneous perception of an employee supposedly having a drug addiction has long qualified as a regarded-as disability under the ADA and Ohio Revised Code Chapter 4112. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 310-11 (6th Cir. 2000) ("The ADA provides protection for employees who are erroneously regarded as current illegal drug users."); *see also Rhoads v. Bd. of Educ. of Mad River Loc. Sch. Dist.*, 103 Fed.Appx. 888, 892-93 (6th Cir. 2004) ("[A]n individual . . . who is regarded as having a drug addiction . . . will be classified as disabled under Ohio law.").

because it serves the county in which a substantial part of the events or omissions giving rise to the claims for relief occurred.

## III. PARTIES

12. Plaintiff Benjamin Barrett ("Plaintiff" or "Mr. Barrett") is a natural person who is a resident of Stark County, Ohio. Defendant Perry Township, Ohio employed Mr. Barrett as a police officer for approximately sixteen years until Defendants fired him on October 15, 2024.

13. Defendant Perry Township, Ohio ("Defendant Township" or the "Township") is a political subdivision of the State of Ohio. Pursuant to Ohio Revised Code Section 503.01, the Township is a body politic and corporate capable of suing and being sued.

14. Defendant Matthew Miller ("Defendant Miller") is a natural person who is a resident of Stark County, Ohio. At all relevant times, Defendant Miller was a member of the board of trustees for the Township. He voted to terminate Mr. Barrett's employment as a police officer because of his disability of alcoholism and/or regarded-as disability of alleged substance addiction. He also voted to not accommodate Mr. Barrett's disability of alcoholism with a reasonable accommodation. As a result, he was a decision-maker on the adverse actions at issue in this lawsuit.

15. Defendant Lisa Nelligan ("Defendant Nelligan") is a natural person who is a resident of Stark County, Ohio. At all relevant times, Defendant Nelligan was a member of the board of trustees for the Township. She voted to terminate Mr. Barrett's employment as a police officer because of his disability of alcoholism and/or regarded-as disability of alleged substance addiction. She also voted to not accommodate Mr. Barrett's disability of alcoholism with a reasonable accommodation. As a result, she was a decision-maker on the adverse actions at issue in this lawsuit.

16. Defendant Ralph DeChiara, Jr. ("Defendant DeChiara") is a natural person who is a resident of Stark County, Ohio. At all relevant times, Defendant DeChiara was a member of the board of trustees for the Township. He voted to terminate Mr. Barrett's employment as a police officer because of his disability of alcoholism and/or regarded-as disability of alleged substance addiction. He also voted to not accommodate Mr. Barrett's disability of alcoholism with a reasonable accommodation. As a result, he was a decision-maker on the adverse actions at issue in this lawsuit.

17. Defendant Bryan Taylor ("Defendant Taylor") is a natural person who is a resident of Stark County, Ohio. At all relevant times, Defendant Taylor was the Chief of Police for the Township. He decided to terminate Mr. Barrett's employment as a police officer because of his disability of alcoholism and/or regarded-as disability of alleged substance addiction. He also decided to not accommodate Mr. Barrett's disability of alcoholism with a reasonable accommodation. As a result, he was a decision-maker on the adverse actions at issue in this lawsuit.

18. Defendant Jason Fisher ("Defendant Fisher") is a natural person who is a resident of Stark County, Ohio. At all relevant times, Defendant Fisher was the Deputy Chief of Police for the Township. He decided to terminate Mr. Barrett's employment as a police officer because of his disability of alcoholism and/or regarded-as disability of alleged substance addiction. He also decided to not accommodate Mr. Barrett's disability of alcoholism with a reasonable accommodation. As a result, he was a decision-maker on the adverse actions at issue in this lawsuit.

## IV. FACTS

19. In or around 2008, the Township hired Mr. Barrett as a police officer.

20. During Mr. Barrett's sixteen years of employment as a police officer with the Township, his job performance was excellent. For instance, throughout his employment, Mr. Barrett received consistently positive praise regarding his performance. He also received various awards. In 2021, for example, Mr. Barrett won the Officer of the Year award at the Township. Additionally, in 2022, Mr. Barrett received a Certificate of Special Congressional Recognition from his then United States Congressman. Mr. Barrett won this award after a female motorist drove into a freezing lake and he, as the responding officer, heroically dove into the water and rescued her from drowning or dying due to hypothermia.

21. During Mr. Barrett's sixteen years of employment as a police officer with the Township, Mr. Barrett always met the qualifications for the position. He is the minimum age of twenty-one years old, is a citizen of the United States, has a high school diploma, has a valid Ohio driver's license free from excessive violations, is able to read and speak the English language, has adequate vision with no color blindness, has an Ohio Peace Officer Training Academy (OPOTA) certification, and has the requisite knowledge and skill to be a police officer. Mr. Barrett also passed the Township's background investigation and its pre-employment medical screening that included a psychological evaluation along with drug and alcohol tests.

22. On November 17, 2023, during his employment at the Township, Mr. Barrett conducted some routine training at the firearm range located at the Stark County Sherriff's Law Enforcement Training Center. After passing his shooting test for his firearms requalification, Mr. Barrett conducted the proper safety checks on his firearm, spoke some with some of the officers at the range, and left.

23. One of the officers at the shooting range allegedly spoke with Defendant Taylor about Mr. Barrett's conduct at the firing range. According to Defendant Taylor, this officer told

him that Mr. Barrett allegedly did not follow proper safety protocols and pointed his firearm at his own head as if he was threatening to commit suicide. This allegation is false and Mr. Barrett never engaged in any of this alleged misconduct. The firing range is a recorded area and all video of Mr. Barrett's conduct at the firing range that day shows he followed the safety protocols and never pointed his firearm at his head as if to threaten to commit suicide.

24. On January 23, 2024, Defendant Taylor and Defendant Fisher determined that Mr. Barrett had allegedly violated several policies of his department with this alleged misconduct, would be issued a five-day suspension, would be removed from his specialized unit called the Canton Regional Crash Team, would be placed on a last chance agreement or "LCA," and would be required to undergo a mental health fitness-for-duty examination with a psychologist.

25. On February 21, 2024, Mr. Barrett and his union grieved this disciplinary action arguing it was unsupported on the facts and that the disciplinary action did not have any just cause as required by the union contract.

26. On March 19, 2024, Defendants Miller, Nelligan, and DeChiara denied Mr. Barrett's grievance and agreed with the disciplinary action issued by Defendant Taylor and Defendant Fisher. They, along with Defendant Taylor and Defendant Fisher, also ordered that Mr. Barrett undergo a mental health fitness-for-duty examination with a psychologist.

27. On April 10, 2024, Defendants sent Mr. Barrett to a mental health fitness-for-duty examination with Robert K. Devies, Ph.D., who is a psychologist. Dr. Devies evaluated Mr. Barrett and, in a written report, alleged that Mr. Barrett was supposedly not fit for duty because he was at "98% risk of being poorly suited to law enforcement." Specifically, Dr. Devies claimed that Mr. Barrett was allegedly at "high risk" for "anger management problems, integrity problems, alcohol use concerns, and substance use proclivity." Dr. Devies then diagnosed Mr.

Barrett with "alcohol use disorder" and "paranoid personality." Finally, Dr. Devies opined that "[g]iven the fact that there is an 18-year history of what has been, for the most part, a productive law enforcement career . . . he is restorable" and able to become fit for duty. Dr. Devies then suggested that, to become fit for duty, Mr. Barrett must attend counseling with payment to his office and consider using an "antidepressant and/or other psychoactive medication."

28. On April 17, 2024, following the report from Dr. Devies, Defendants placed Mr. Barrett on unpaid leave of absence and an indefinite suspension.

29. On April 18, 2024, Mr. Barrett and his union filed a grievance contending that the discipline and indefinite suspension were without just cause under the union contract. They also disputed Dr. Devies' allegations.

30. On August 18, 2024, Mr. Barrett and his union also responded by having him obtain a second opinion from his own provider, Michael W. Faust, Ph.D., who is likewise a psychologist. Dr. Faust evaluated Mr. Barrett and, in a written report, opined that Mr. Barrett was, in fact, fit for duty as a police officer with the Township. Dr. Faust also diagnosed Mr. Barrett with alcohol use disorder with a related major depressive disorder, stating he "meets the criteria for the DSM-5." But Dr. Faust then disagreed with Dr. Devies and opined that Mr. Barrett presented no evidence of "paranoid personality." Ultimately, Dr. Faust strongly disagreed with Dr. Devies' conclusions on fitness for duty. He then opined that Mr. Barrett was fully fit to return to duty as a police officer with the Township and the only accommodation he needed was intermittent leave or scheduling allowances to continue his recommended treatment with his family physician and attend his Alcoholics Anonymous meetings three times a week.

31. After Dr. Faust completed his report, Mr. Barrett and his union promptly submitted it to Defendants. They also specifically requested that Defendants return Mr. Barrett

to full duty consistent with Dr. Faust's evaluation and give him the accommodation of continued treatment with his own family physician and through Alcoholics Anonymous meetings. Defendants refused to return Mr. Barrett to full duty. They also refused the accommodations requested by Mr. Barrett and his union. Instead, Defendants stated that the only accommodation they would consider is Mr. Barrett treating with Dr. Devies. They otherwise refused to engage in the interactive process in good faith to explore other possible accommodations or to explore the use of a third, mutually agreed-upon psychologist who could provide a third opinion on Mr. Barrett's fitness for duty.

32. On October 15, 2025, Defendants Miller, Nelligan, and DeChiara, at the recommendation of Defendants Taylor and Fisher, voted to terminate Mr. Barrett's employment because of his diagnosed alcoholism and perceived "proclivity" for "substance use." Specifically, these Defendants drafted and entered an Administrative Personnel Determination in which they cited Dr. Devies' conclusions on Mr. Barrett's alcoholism and perceived "proclivity" for "substance use" as alleged evidence that Mr. Barrett was supposedly not able to perform the essential functions of his job as a police officer. Defendants also refused to consider Dr. Faust's contrary report which reached conclusions opposite Dr. Devies even though Dr. Faust's report was far more credible.

33. On October 20, 2024, Mr. Barrett and his union filed a grievance contending that his termination of employment was without just cause under the union contract.

34. On September 23, 2025, the grievances Mr. Barrett had filed over these disputes proceeded to an arbitration hearing.

35. On May 27, 2026, the arbitrator issued an award in which he found in favor of Mr. Barrett. Specifically, the arbitrator found that Defendants lacked just cause to discipline and

then terminate Mr. Barrett. Moreover, the arbitrator specifically found that Dr. Faust's opinions and Dr. Devies' opinions created disputed issues of fact on whether Mr. Barrett was fit or unfit for duty. As a result, the arbitrator also ordered the parties to agree upon a third psychologist who would provide a third opinion on whether Mr. Barrett's alcoholism and alleged "proclivity" for "substance use" rendered him unfit for duty.

36. Defendants, rather than abide by the arbitrator's decision, refused to comply with it. Instead, they filed an appeal with the Court of Common Pleas for Stark County, Ohio. This appeal, given the deferential standard for arbitrators in Ohio Revised Code Section 2711.10, is arguably frivolous. There was no fraud, corruption, or misconduct by the arbitrator. The arbitrator also did not exceed his powers, and the award was not vague.

37. Importantly, throughout Mr. Barrett's employment with the Township, there was no evidence he ever engaged in illegal drug use that would show any "proclivity" toward "substance abuse" as Dr. Devies alleged. During his sixteen years of employment, Mr. Barrett was subjected to various drug and alcohol tests. He never failed a test. Moreover, Mr. Barrett never used any illegal drugs while employed by the Township and never had a substance abuse or drug addiction problem. The only time Mr. Barrett has ever used illegal drugs was when he tried marijuana after graduating from high school and six years before ever becoming a police officer for the Township. As a result, there was no factual basis to terminate Mr. Barrett's employment for a perceived "proclivity" for "substance use."

38. Finally, Mr. Barrett did, however, suffer from alcoholism. This alcoholism led Mr. Barrett to drink excessively while off duty. He never consumed alcohol while on the job or working as a police officer for the Township. And the alcoholism never affected his ability to perform his job. For instance, he performed his job well for sixteen years despite his condition.

However, the alcoholism does substantially limit Mr. Barrett in several of his major life activities, including his brain and neurological functioning and his ability to interact with others and communicate. Mr. Barrett voluntarily sought treatment on his own that included weekly Alcoholics Anonymous meetings, treatment by his family physician, and attending an alcoholism treatment program at an outpatient rehabilitation facility. As Dr. Faust agreed, those treatments have been successful in continuing to ensure his ability to perform his job.

39. On August 31, 2026, Mr. Barrett filed a charge of discrimination with the Ohio Civil Rights Commission (the "Commission") alleging the facts and claims contained in this Complaint.[3]

## V. CLAIMS FOR RELIEF

### COUNT I

**Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983**
**Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**
**(Disability Discrimination – Termination of Employment)**

**Against Defendants Miller, Nelligan, DeChiara, Taylor, and Fisher**

40. All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

41. Plaintiff was at all relevant times a "citizen of the United States or other person within the jurisdiction thereof" within the meaning of 42 U.S.C. § 1983.

---

[3] Mr. Barrett has yet to receive his notice-of-right-to-sue letter from the Commission but files his claims under Ohio Revised Code Chapter 4112 using the provision in Section 4112.052(b)(2)(a). Specifically, at present, his state law claims only seek injunctive relief and, upon requesting or receiving his notice-of-right-to-sue letter from the Commission, Mr. Barrett will amend this Complaint to seek damages on them under Section 4112.052(B)(3)(a) or Section 4112.052(B)(3)(b)

42. Defendants Miller, Nelligan, DeChiara, Taylor, and Fisher were, at all relevant times, "person[s]" within the meaning of 42 U.S.C. § 1983 because they are sued for prospective injunctive relief in their official capacities and for money damages in their individual capacities.

43. Defendants Miller, Nelligan, DeChiara, Taylor, and Fisher acted under color of a statute, ordinance, regulation, custom, or usage of the State of Ohio and deprived Plaintiff of her rights, privileges, or immunities secured by the federal Constitution or federal law when they terminated Plaintiff's employment because of his disabilities and/or refused to reasonably accommodate his disabilities. Alternatively, Plaintiff's disabilities were a motivating factor in the decision by Defendants Miller, Nelligan, DeChiara, Taylor, and Fisher to terminate Plaintiff's employment.

44. As a proximate result of Defendants Miller, Nelligan, DeChiara, Taylor, and Fisher's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

45. Plaintiff is entitled to punitive damages because Defendants Miller, Nelligan, DeChiara, Taylor, and Fisher were motivated by evil motive or intent or acted with reckless or callous indifference to Plaintiff's federally protected rights.

46. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count I.

**COUNT II**

**Violation of Ohio Revised Code Chapter 4112**
**(Disability Discrimination – Termination of Employment)**

**Against Defendant Township**

47. All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

48. Plaintiff was at all relevant times an "employee" within the meaning of Ohio Revised Code Section 4112.01(A)(3).

49. Plaintiff at all relevant times had a "disability" within the meaning of Ohio Revised Code Section 4112.01(A)(13).

50. Defendant Township was at all relevant times an "employer" within the meaning of Ohio Revised Code Section 4112.01(A)(2).

51. Defendant Township violated Ohio Revised Code Chapter 4112 when it terminated Plaintiff's employment because of his disability or disabilities. Alternatively, Plaintiff's disability or disabilities were a motivating factor in the decision by Defendant Township to terminate Plaintiff's employment.

52. As a proximate result of Defendant Township's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

**COUNT III**

**Violation of Ohio Revised Code Chapter 4112**
**(Regarded-As Disability Discrimination – Termination of Employment)**

**Against Defendant Township**

53. All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

54. Plaintiff was at all relevant times an "employee" within the meaning of Ohio Revised Code Section 4112.01(A)(3).

55. Plaintiff at all relevant times had a "disability" within the meaning of Ohio Revised Code Section 4112.01(A)(13).

56. Defendant Township was at all relevant times an "employer" within the meaning of Ohio Revised Code Section 4112.01(A)(2).

57. Defendant Township violated Ohio Revised Code Chapter 4112 when it terminated Plaintiff's employment because of a physical and/or mental impairment and/or an erroneously perceived physical and/or mental impairment. Alternatively, Plaintiff's physical and/or mental impairment and/or an erroneously perceived physical and/or mental impairment was a motivating factor in Defendant Township's decision to terminate Plaintiff's employment.

58. As a proximate result of Defendant Township's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

**COUNT IV**

**Violation of Ohio Revised Code Chapter 4112**
**(Disability Discrimination – Failure to Accommodate)**

**Against Defendant Township**

59. All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

60. Plaintiff was at all relevant times an "employee" within the meaning of Ohio Revised Code Section 4112.01(A)(3).

61. Plaintiff at all relevant times had a "disability" within the meaning of Ohio Revised Code Section 4112.01(A)(13).

62. Defendant Township was at all relevant times an "employer" within the meaning of Ohio Revised Code Section 4112.01(A)(2).

63. Defendant Township violated Ohio Revised Code Chapter 4112 when it failed to provide a reasonable accommodation for Plaintiff's disability.

64. As a proximate result of Defendant Township's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

## COUNT V

### Violation of Ohio Revised Code Chapter 4112
### (Retaliation – Termination of Employment)

### Against All Defendants

65. All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

66. Plaintiff was at all relevant times a "person" within the meaning of Ohio Revised Code Section 4112.01(A)(1).

67. Defendants were at all relevant times "person[s]" within the meaning of Ohio Revised Code Section 4112.01(A)(1).

68. Plaintiff engaged in the activity protected by Ohio Revised Code Section 4112.02(I) when he requested or made use of accommodations for a medical condition.[4]

69. Defendants violated Ohio Revised Code Section 4112.02(I) by terminating Plaintiff's employment because Plaintiff engaged in the protected activity set forth in the statute. Alternatively, Plaintiff's protected activity was a motivating factor in the decision by Defendants to terminate his employment.

---

[4] *Morrisey v. Laurel Health Care Co.*, 946 F.3d 292, 304 (6th Cir. 2019) (holding that requesting an accommodation is protected activity for a retaliation claim); *A.C. v. Shelby County Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013) (same); *Bryson v. Regis Corp.*, 498 F.3d 561, 576-78 (6th Cir. 2007) (same) (finding the plaintiff "presented sufficient evidence to raise the inference that she was unlawfully retaliated against on the basis of her request for an accommodation"); see also *Hurtt v. Int'l Servs.*, 627 Fed.Appx. 414, 422-23 (6th Cir. 2015) (same even where the underlying medical condition did not qualify as an actual disability) ("But, the pertinent inquiry here is not whether [the plaintiff] proved he had a disability under the ADA . . . but rather, whether [the plaintiff] showed a good-faith request for reasonable accommodations."); *Baker v. Windsor Republic Doors*, 414 Fed.Appx. 764, 777 n.8 (6th Cir. 2011) (same) ("But as the district court correctly instructed the jury, to establish a retaliation claim the plaintiff need not prove he had a disability under the ADA. Rather, the protected act is the showing of a good-faith request for reasonable accommodations.").

70. As a proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

**COUNT VI**

**Violation of Ohio Revised Code Chapter 4112**
**(Aiding and Abetting Unlawful Discrimination and Retaliation)**

**Against Defendants Miller, Nelligan, DeChiara, Taylor, and Fisher**

71. All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

72. Plaintiff was at all relevant times an "employee" within the meaning of Ohio Revised Code Section 4112.01(A)(3).

73. Defendants Miller, Nelligan, DeChiara, Taylor, and Fisher were at all relevant times "person[s]" within the meaning of Ohio Revised Code Section 4112.01(A)(1).

74. Defendants Miller, Nelligan, DeChiara, Taylor, and Fisher violated Ohio Revised Code Section 4112.02(J) when tPerhey aided, abetted, incited, compelled, or coerced the unlawful discrimination and/or retaliation against Plaintiff set forth in this Complaint.

75. As a proximate result of Defendants Miller, Nelligan, DeChiara, Taylor, and Fisher's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment in his favor on all claims in this Complaint and requests the following relief:

A. Economic compensatory damages in an amount to be determined at trial;

B. Non-economic compensatory damages in an amount to be determined at trial;

C. Liquidated, treble, punitive, or other exemplary damages in an amount to be determined at trial;

D. Reinstatement or, in the alternative, front pay in an amount to be determined;

E. Reasonable attorneys' fees incurred in pursuing the claims against Defendants;

F. All costs and expenses incurred in pursuing the claims against Defendants;

G. Pre- and post-judgment interest; and

H. All other legal and equitable relief this Court and/or a jury determines is appropriate.

## VII. JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury on all claims and issues that are triable.

Respectfully submitted,

By: /s/ Jason E. Starling

Jason E. Starling (Ohio Bar No. 0082619)
STARLING | LAW
9482 Wedgewood Boulevard, Suite 100
Powell, Ohio 3065
Office: (614) 683-6773
Direct: (614) 683-6702
jason@starling-law.com

*Attorneys for Plaintiff Benjamin Barrett*